UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| WILLIAM DALE ALLEN, # 178666, | Civil Action No.: 4:07-0797-DCN-TER |
| Plaintiff, | |
| -vs- | |
| LISA CARRINGTON, in her official capacity as Grievance Coordinator at Lieber Correctional Institution; VERA JENKINS, in her official capacity as Grievance Coordinator at Lieber Correctional Institution; STAN BURTT, in his official capacity as Warden at Lieber Correctional Institution and JON E. OZMINT, Director of South Carolina Department of Corrections, | **REPORT AND RECOMMENDATION** |
| Defendants. | |

I.  **INTRODUCTION**

In this action, Plaintiff, who is proceeding pro se, is an inmate in the custody of the South Carolina Department of Corrections (SCDC), and is housed at the Lieber Correctional Institution. He asserts violations of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, et seq. (2000) and the Rehabilitation Act (RA), 29 U.S.C. § 791, et seq. Presently before the Court are Defendants' Motions for Summary Judgment (Documents # 46, 60). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because these motions are potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II. FACTS

In his sworn Amended Complaint (Document # 35), Plaintiff sets forth the following facts:

> Plaintiff is housed in the handicap unit [at Lieber Correctional Institution], namely, "Stono B-side." In June 2001, plaintiff's eye exam made him qualified for services and programs. Therefore, plaintiff used an auxillary aid-tape player as well as radio for aid. These services and programs and benefits were provided by South Carolina Department of Corrections, until he was excluded from the aforementioned benefits and services on September 27, 2006, with without [sic] explanation.
> Plaintiff is legally blind and the use of the auxillary aid-tape player, as well as, the radio aids in reading and communication. Plaintiff has no vision at all in one eye, and limited vision in the other. On September 27, 2006, Lieber Inst. conducted a Stono B side shakedown and all inmates were ordered out of the cell. Ms. Vera Jenkins, who is a grievance Coordinator and Lisa Carrington, who is also a grievance coordinator both entered plaintiff's prison cell and took the auxillary-aid tape player and radio, and when plaintiff ask them about taking these items, namely the tape player and radio, Ms. Vera Jenkins said Warden Stan Burtt, ordered the items taken, because there was nothing wrong with me.

Amended Complaint at p. 3. Other than their general denial set forth in their Answer, Defendants offer no evidence disputing these facts.

## III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. <u>Celotex</u>, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); <u>Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably

find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).  To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings.  Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any."  Id. at 322.  See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

IV. **DISCUSSION**

In their first Motion, Defendants argue that summary judgment is proper based on Eleventh Amendment immunity and qualified immunity, and because Plaintiff failed to state a claim and failed to exhaust administrative remedies.

A. Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution prohibits "any suit . . . against one of the United States by citizens of another State," U.S. Const. Amend. XI, and (as interpreted) by its own citizens, Hans v. Louisiana, 134 U.S. 1 (1890); Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996), without its consent. Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This immunity extends to suits against state agencies, divisions, departments, and officials. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984); Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). However, the Eleventh Amendment does not bar suits seeking damages from government officials in their individual capacities. See S.C. State Ports Auth. v. Fed. Mar. Comm'n, 243 F.3d 165, 170 (4th Cir.2001), aff'd, 535 U.S. 743, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002).

Congress may abrogate the States' Eleventh Amendment immunity, but only by stating unequivocally its desire to do so and only pursuant to a valid exercise of constitutional authority. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The ADA creates a limited exception to state sovereign immunity. A disabled inmate may sue a state or state institution only for ADA violations which also violate the Fourteenth Amendment. United States v. Georgia, 546 U.S. 151, 159, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006). Since the relevant provisions of the Eighth Amendment are made applicable to the states by the Fourteenth Amendment, Plaintiff may only state an ADA claim against Defendants if he has alleged that his

Eighth Amendment rights were violated. Id. at 157-59; see also Blackburn v. South Carolina, C/A No. ):06-2011-PMD-BM, 2009 WL 632542, *20-21 (D.S.C. March 10, 2009); Spencer v. Earley, 278 Fed. Appx. 254, 257-59 (4th Cir.2008); Chase v. Baskerville, 508 F.Supp.2d 492, 501-07 (E.D.Va.2007).

Here, Plaintiff alleges that Defendants violated Title VII of the ADA when they removed the tape player and radio from his cell. However, as noted by the court in Blackburn, it is not sufficient for Plaintiff to show that Defendants did not comply with the requirements of the ADA; to withstand sovereign immunity, Plaintiff must show that removing the tape player and recorder from his cell "so deprived him of the essential needs of habitation that it violated his Eighth Amendment rights as applied to the states under the Fourteenth Amendment." Blackburn, 2009 WL 632542, at * 21. Here, Plaintiff fails to allege or show that he suffered a violation of a constitutional right. Therefore, his claim for monetary damages under the ADA is barred by the doctrine of sovereign immunity.

However, 42 U.S.C. § 2000d-7 provides that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C.A. § 794], title IX of the Education Amendments of 1972 [20 U.S.C.A. § 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C.A. § 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." Plaintiff has not provided any information regarding whether the South Carolina Department of Corrections receives federal financial assistance. However, the Supreme Court has noted that "every state . . . accepts federal funding for its prisons." Cutter v. Wilkinson,

544 U.S. 709, 714 n.4 (2005). Thus, Defendants' claim of Eleventh Amendment immunity fails as to Plaintiff's Rehabilitation claim.

B.   Qualified Immunity

Defendants next argue that they are entitled to qualified immunity because their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Individual Defendants cannot be liable under Title II of the ADA or the Rehabilitation Act in their individual capacities. Pathways Psychosocial v. Town of Leonardtown, 133 F.Supp.2d 772 (D.Md.2001); Eason v. Clark County School Dist., 303 F.3d 1137, 1145 (9th Cir.2002). Thus, any claims against Defendants Carrington, Jenkins, Burtt, and Ozmint in their individual capacities must fail.

C.   Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C. 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Exhaustion under the PLRA is required for both ADA claims and claims under the Rehabilitation Act. See O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1060-61 (9th Cir. 2007).

Accordingly, before plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the SCDC grievance process. Defendants allege that Plaintiff has failed to exhaust his administrative remedies because he has failed to produce evidence that he appealed the final decision of the detention center to the Administrative Law Court. Because Plaintiff's complaint was against Carrington and Jenkins, who are Inmate Grievance Coordinators at Lieber Correctional Institute, Plaintiff's grievance was automatically forwarded to the Step 2 level. See Inmate Grievance Form, Step 2 (Ex. 5 to Defendants' Motion for Summary Judgment). The Step 2 grievance was denied. However, although a prisoner may appeal the final decision of the detention center to the Administrative Law Court, it is not a required step prior to filing an action in this court. When Plaintiff's Step 2 grievance was denied, he had exhausted administrative remedies for the purposes of 42 U.S.C. § 1997(a) under the SCDC's policy. See Charles v. Ozmint, 2006 WL 1341267 (D.S.C. May 15, 2006); Jenkins v. South Carolina Dept. of Corrections, 2006 WL 1083563 (D.S.C. April 18, 2006) ("The decision of the 'responsible official' who answers Step 2 is the Department's final response in the matter."). Section 1997(a) does not require inmates to further appeal to Administrative Law Court before bringing a claim in federal court.

D.   Merits

Title II of the ADA[1] and § 504 of the Rehabilitation Act both prohibit discrimination on the basis of disability. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified

---

[1]Plaintiff's ADA claim goes forward only to the extent that Plaintiff seeks injunctive relief.

individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."

Because the language and purpose of Title II of the ADA and § 504 of the Rehabilitation Act are substantially the same, the same analysis applies to claims brought under either statute. Doe v. University of Md. Med. Sys. Corp., 50 F.3d 1261, 1264 n. 9 (4th Cir.1995). A plaintiff seeking relief under either the ADA or the Rehabilitation Act must present sufficient evidence to establish that 1) he has a disability, 2) he is otherwise qualified to receive the benefits of the public services, programs, or activities, and 3) he was denied the benefits of such services, programs, or activities, on the basis of his disability. See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir.2005); Baird v. Rose, 192 F.3d 462, 468 (4th Cir. 1999). The ADA applies to programs and services of a public entity, and a plaintiff has the burden of showing that his disability "played a motivating role" in the challenged action. Id. at 468-69. The Rehabilitation Act applies to programs that receive federal financial assistance, and a plaintiff must show that the discrimination occurred "solely by reason of" his disability. Id.

Defendants do not present any evidence to support their Motion for Summary Judgment. They rely on the evidence attached to the Amended Complaint. Defendants first argue that Plaintiff has failed to establish that he is a qualified individual with a disability. In defining what constitutes a qualifying disability, the Rehabilitation Act cites to the definition of disability found in 29 U.S.C. § 705(20). See 29 U.S.C. § 794(a). This section defines an "individual with a disability" as any person who "(i) has a physical or mental impairment, which substantially limits one or more of such

person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment."

Plaintiff's medical records revealed that he was "legally blind" in his left eye. See Medical Record attached to Amended Complaint (Document # 35). Plaintiff's most recent medical records reveal that he has no light perception (NLP) in one eye. See Court Ordered Medicals (Document # 87). In Albertson's Inc. v. Kirkingburg, 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999), the Supreme Court stated that individuals "with monocular vision 'ordinarily' will meet the [ADA's] definition of disability." Albertson's, 527 U.S. at 567; but see Foore v. City of Richmond, Va., 6 Fed.App. 148, **4 (4th Cir. 2001) (finding Plaintiff's case was not "ordinary" in that he had overcome his impairment). Defendants have failed to present any evidence to the contrary. Thus, given the Supreme Court's statement in Albertson's, the undersigned finds for purposes of this motion that Plaintiff has a disability as contemplated by the ADA and the Rehabilitation Act.

Next, Plaintiff must show that he was otherwise qualified to receive the benefits of the public services, programs, or activities. Courts have construed "the benefits of a program or activity" to include the general rehabilitative and correctional services of state prisons, and have therefore required prisons to make "reasonable accommodations" for an inmate's physical disabilities in their day-to-day operations in order to comply with the mandates of the Rehabilitation Act. See Torcasio v. Murray, 862 F.Supp. 1482 (E.D.Va.1994) (holding that the Rehabilitation Act's reasonable accommodations requirement applies to an obese inmate's claim that the state prison was not adequately equipped to accommodate his disability), rev'd on other grounds in Torcasio, 57 F.3d 1340; Randolph v. Rodgers, 170 F.3d 850 (8th Cir.1999).

The record reveals that Phyllis Ross with Protection and Advocacy for People with Disabilities, Inc. and the state library worked together to loan to Plaintiff a tape player and provide him with a system through which he could order reader tapes. Ross Email (attached to Amended Complaint). Plaintiff had the tape player for five years before it was confiscated during a shakedown. Id. However, nothing in the record indicates that a tape recorder or a radio would reasonably accommodate Plaintiff in his participation of the day-to-day operations of the prison. LCI did provide Plaintiff with a cane and assigned another inmate, David Rhame, to assist Plaintiff with getting to and from the cafeteria and carrying his tray and whatever other needs he may have as a result of his eyesight. See Cane Pass (attached to Document # 29) and Rhame Aff. (attached to Amended Complaint). Rhame avers that it was his job to assist Plaintiff. Id. Thus, LCI did provide Plaintiff with reasonable accommodations to participate in the day-to-day operations of the prison.

Also, Plaintiff complains of the tape recorder and radio being taken from his possession. However, he fails to produce any evidence or even allege that he does not otherwise have access to reading aids or radios or that other inmates were allowed to keep reading materials in their possession. Nothing in the record indicates that he was treated any differently than any other inmate at LCI or that he was denied access to any programs that were available to all other inmates because of his disability. To find otherwise based upon the record presented would require the Court to engage in speculation. Plaintiff essentially seeks additional or special accommodations, which LCI is not required to provide under either the ADA or the Rehabilitation Act.[2]

---

[2]Furthermore, even with Plaintiff's disability, nothing in the record indicates that he was unable to read. Two inmates aver that Plaintiff told them he gets headaches when he tries to read. Owen Aff. and Rhame Aff. (attached to Amended Complaint).

Therefore, Plaintiff has failed to create a genuine issue of material fact as to whether Defendants violated the ADA or the Rehabilitation Act by taking his tape player. Thus, summary judgment is appropriate.

## V. CONCLUSION

For the reasons stated above, it is recommended that Defendants' first Motion for Summary Judgment (Document # 46) be granted, Defendants' second Motion for Summary Judgment (Document # 60) be deemed moot[3] and this case be dismissed in its entirety.[4]

        s/Thomas E. Rogers, III
        Thomas E. Rogers, III
        United States Magistrate Judge

August 7, 2009
Florence, South Carolina

---

[3]In the alternative, it is recommended that the second Motion for Summary Judgment be denied. Defendants bring this Motion based upon Plaintiff's failure to respond to the following Request to Admit: "Plaintiff's conduct was the sole and proximate cause of any and all damages that he suffered based on the allegations in Plaintiff's Complaint." It has been held that requests for admission cannot be used to compel the admission of a conclusion of law. Playboy Enterprises, Inc. v. Welles, 60 F.Supp.2d 1050, 1057 (S.D.Cal. 1999); Reliance Ins. Co. v. Marathon LeTourneau Co., 152 F.R.D. 524, 525 n.2 (S.D.W.Va.1994); Diederich v. Department of the Army, 132 F.R.D. 614, 617 (S.D.N.Y.1990). Proximate cause is a mixed question of law and fact. Thus, summary judgment would not be appropriate for this reason.

[4]Plaintiff has filed four motions to amend or supplement his Complaint (Document #s 52, 54, 55, 63). However, these amendments would be futile for the same reasons summary judgment is appropriate. Therefore, these motions are **DENIED**. Plaintiff also filed a motion to appoint counsel (Document # 53). The medical records in evidence do not support a finding of exceptional circumstances necessary for appointment of counsel. Thus, that motion is **DENIED** as well.